Coca Cola Bottling Company v. Shipp.

Opinion delivered May 23, 1927.

1. Municipal corporations—negligence in parking truck without lights.—In an action for damages in an automobile collision, evidence *held* as support of finding in effect that the owner of a motor truck was negligent in parking it at night without lights at the side of the street.

2. Appeal and error—conclusiveness of verdict.—In an action for damages in an automobile collision, where the jury were

instructed that, if plaintiff was guilty of contributory negligence, he could not recover, and the jury found in favor of the plaintiff, it will be assumed on appeal that they found that the plaintiff was not guilty of contributory negligence.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.—Plaintiff cannot recover for an injury which he would not have sustained, had he not himself been negligent.

4. MUNICIPAL CORPORATIONS—CONTRIBUTORY NEGLIGENCE IN DRIVING AUTOMOBILE.—One who drives an automoble at night too fast to stop within the range of his own lights in case of a collision is not guilty of contributory negligence as matter of law, but each case must be considered in the light of its particular facts and circumstances, the test being what an ordinarily prudent person would have done under circumstances as they then appeared to exist.

5. MUNICIPAL CORPORATIONS—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE AS JURY QUESTIONS.—In an action for damages in an automobile collision whether the driver, going too fast to stop within the range of his own lights, was guilty of contributory negligence, and whether defendant parking a motor truck on the side of the street at night without lights was guilty of negligence, *held* under the evidence to be questions for the jury.

6. NEGLIGENCE—QUESTIONS FOR JURY.—Wherever evidence is such that fair-minded men might honestly differ about negligence or contributory negligence, such questions are for the jury and not for the court.

7. MUNICIPAL CORPORATIONS—AUTOMOBILE COLLISION—ADMISSION OF ORDINANCE IN EVIDENCE.—In an action for damages in a collision with a motor truck parked at night without lights at the side of the street, the admission in evidence of a city ordinance relating to lights on motor vehicles, which could not aid the jury in determination of the issues and instructions referring thereto, was erroneous, in view of the fact that the ordinance did not impose on the owner of the truck any additional duties relating to the issues in the case, and did not aid the jury.

8. NEGLIGENCE—DEFINITION.—Negligence is doing something a person of ordinary prudence would not do, or failure to do something that persons of ordinary prudence would do, under the circumstances.

9. EVIDENCE—IRRELEVANCY.—All facts are admissible in evidence which afford reasonable inferences or throw any light on the matter contested, but circumstances having no direct connection with the case, which are remote, collateral, or irrelevant, are not admissible.

Appeal from Monroe Circuit Court; *George W. Clark*, Judge; reversed.

*Roscoe R. Lynn* and *June P. Wooten,* for appellant.

*Bogle & Sharp, Carl E. Bailey* and *Sam T. & Tom Poe,* for appellee.

Smith, J.   Appellee is a traveling salesman, selling oil and gas in the vicinity of Little Rock.   He took orders for his wares, and in some cases made deliveries, in doing which he drove a Ford roadster.   On August 18, 1925, he had been to Carlisle and Lonoke, in which last named town he arrived about 10:30 p. m., where he remained, eating supper until about midnight, after which he started to Little Rock, his home and headquarters.   In doing this it was necessary for him to drive through the city of North Little Rock, where he arrived shortly after 1 a. m.   He reached East Third Street in that city, which is shown to be one of the city's largely used streets, especially at that season of the year, when many persons went to the bathing beach at Willow Beach, and who, in returning, drove down that street.   At the intersection of East Third and Olive Streets, in the city of North Little Rock, there is a large concrete post, on the top of which a red light was burning, and on the northeast corner of Third Street was an electric light, set upon an arm which extended over the corner of the streets. There is a conflict in the testimony as to the size of the light and the area it illuminated, but the undisputed testimony shows that it was a part of the city's lighting system.

About 8 p. m. on August 18, 1925, the driver of a truck belonging to the Coca-Cola Bottling Company found out his truck was disabled so that the truck could not proceed to the garage where it was kept.   He called the office of that company, and was advised that the mechanic who attended to such repairs was not at hand, and the driver of the truck was directed to park the car where it was, if he was unable to make the necessary repairs which would enable him to reach his destination. The truck was equipped with a large wooden body, which extended out from the rear wheels about a foot and a-half on each side.   The truck was used for transporting the

products of appellant from its plant in Little Rock to near-by towns, and had been so used on the day in question, and was filled to its capacity with cases containing empty bottles, and at the rear end of the truck a large barrel was piled on top of the load. The driver was unable to make the necessary repairs of the truck, so he parked it near the northeast corner of the intersection of East Third and Olive streets, headed west, which was the direction appellee was driving on Third Street. The truck was not placed against the curb, and the rear end extended further into the street than the front. The testimony shows that the truck was so parked as to interfere with the traffic, and this interference was increased by the presence of the traffic post in the center of the two intersecting streets. There were no lights of any kind on either end of the truck.

Appellee testified that he had been driving about twenty-five miles an hour, but, as he approached the intersection of East Third and Olive streets, he slowed down to about twenty miles per hour on account of the approach of another automobile from the opposite direction. This car had bright lights, which blinded appellee to some extent as it came nearer, and, as the approaching car was about to pass, appellee turned his car slightly to the right, and ran into the truck, which he did not see until he turned. Appellee immediately applied his brakes, but was unable to avoid the collision, and a terrific impact occurred. So great was the force of the collision that the car appellee was driving was driven under the rear of the truck, and it was necessary to pry them apart. The impact smashed the radiator, the windshield, and the steering wheel of appellee's car, and inflicted upon him a very serious injury. The force of the collision was so great that a man sleeping in a house on the opposite corner was awakened from his sleep.

Appellee recovered a judgment to compensate his injuries, and this appeal is from that judgment.

Error is assigned in giving and in refusing to give certain instructions; but we find it unnecessary to discuss this assignment of error. The instructions given required the jury to find, before returning a verdict for the plaintiff, that the defendant was negligent. This feature of the case presents but little difficulty, as we think the testimony fully supports that finding. The jury was also instructed that, if plaintiff was guilty of negligence contributing to his injury, he could not recover, and, as there was a verdict in his favor, we assume that the jury found that appellee was not guilty of contributory negligence. The correctness of this finding presents the controlling and the difficult question in the case.

We have concluded, after a careful consideration of the testimony in the case and a review of many authorities applicable thereto, that plaintiff was guilty of contributory negligence, and that the trial court should have so instructed the jury. Under this view it is unnecessary to determine whether error was committed in giving or in refusing to give instructions as requested.

A leading case on the subject is that of *Lauson* v. *Fond du Lac,* 123 N. W. 629, 141 Wis. 57, 25 L. R. A. (N. S.) 40, 135 Am. St. Rep. 30, which was decided by the Supreme Court of Wisconsin in 1909. This case is annotated in 25 L. R. A. (N. S.) 40. The facts there were that a car was being driven at a speed of eight miles per hour on a dark, rainy night, and the driver could not see objects more than ten or twelve feet ahead, and could not bring his car to a stop within less than fifteen or twenty feet. The driver ran into a hole which had been negligently left in the road. The trial court submitted the question of negligence and of contributory negligence to the jury, and there was a verdict and judgment in plaintiff's favor. This judgment was reversed and the cause dismissed, for the reason that the driver of the car was guilty of contributory negligence. In so holding it was pointed out that self-propelling machines of great weight and high power had come into general use, which, when driven at a reckless speed, are a con-

stant menace to their occupants and to the traveling public, which has not and cannot abdicate its right to use the streets and roads of city and country. It was there said that the automobile had created a new peril in the use of the public highways, and one which is greatly enhanced by the recklessness of drivers who propel them with the speed of trains on well-defined tracks, and that some rule consonant with the public safety and not unduly harsh or restrictive upon the users of motor cars must be evolved to meet conditions which the automobile had created. In declaring such a rule the court said:

"It seems to us, and we decide, that the driver of an automobile, circumstanced as was the driver of the car in which the plaintiff was riding, and operating it under such conditions as he operated his machine on the night of the accident, is not exercising ordinary care if he is driving the car at such a rate of speed that he cannot bring it to a standstill within the distance that he can plainly see objects or obstructions ahead of him. If his light be such that he can see objects for only a distance of 10 feet, then he should so regulate his speed as to be able to stop his machine within that distance; and, if he fails to do so, and an accident results from such failure, no recovery can be had. This, it seems to us, is the minimum degree of care that should be required. Circumstances might arise where it would be reckless to drive at such a rate of speed, or even at a rate approximating it. We do not ground this rule on the fact that we have a statute requiring automobiles to carry reasonably bright lights while being operated during the hours of darkness. Independent of any statute, and considering the character of these machines, we hold it would be negligent operation to run them without sufficient lights to enable the driver to see objects ahead of him in time to avoid them. Such is substantially the rule adopted by the Supreme Court of Connecticut in a well-considered case in reference to the running of a street car."

This case has been frequently cited and approved, and, while there are cases which do not state the rule

so broadly, it announces what we conceive to be the proper rule. We hold therefore that, if one drives his car at night at a speed so great that he cannot stop within the range of his vision, the lights are of but little value, and if, while so driving, he has a collision, he is negligent. He cannot say that he depended on his lights when the rays thereof do not project a sufficient distance to enable him to stop after discovering the peril. The excessive speed neutralizes the protection which the lights would otherwise afford where one drives so fast that he cannot stop after the lights have made the obstruction visible. Due care requires one to take into account the distance his lights project and forbids driving at a speed so great that a stop cannot be made within the distance one can discover a peril to himself or to another. If one drives at a greater speed than this, he is taking a chance which prudence would avoid, and if, while taking this chance, his negligence coincides with the negligence of another and produces an injury, the negligent party cannot recover, because his own negligence contributed to his injury. Nothing is better settled than that one cannot recover for an injury which he would not have sustained, had he himself not been negligent.

A case in which the facts are strikingly similar to those of the instant case is that of *Knoxville Ry. & Light Co. v. Vangilder*, 178 S. W. 1117, 132 Tenn. 487, L. R. A. 1916A, 1111, decided by the Supreme Court of Tennessee, the first syllabus of which reads as follows:

"A person who drove an automobile at night in a dark place on the highway so fast that he could not avoid an obstruction within the distance lighted by his lamps was guilty of contributory negligence, barring his recovery, though, just before the accident, the bright lights of an approaching automobile and a curve where his own light did not shine directly in the way the machine was going hindered him from seeing the obstruction."

Among the numerous cases which support the view here announced are the following: *Shawano County* v. *Froeming Bros.*, 202 N. W. 186, 186 Wis. 491; *Fannin* v. *Minneapolis, St. P. & S. S. M. Ry. Co.*, 200 N. W. 651, 185 Wis. 30; *Worden* v. *Chicago & N. W. Ry. Co.*, 193 N. W. 356, 180 Wis. 551; *Raymond* v. *Sauk County*, 166 N. W. 29, 167 Wis. 125; *Pietsch* v. *McCarty*, 150 N. W. 482, 159 Wis. 251; *Holsaple* v. *Superintendents of Poor of Menominee County*, 206 N. W. 529, 202 Mich. 603; *Gleason* v. *Lowe*, 205 N. W. 199, 232 Mich. 300; *Spencer* v. *Taylor*, 188 N. W. 461, 219 Mich. 110; *Serfas* v. *Lehigh & N. R. Co.*, 113 Atl. 370, 270 Pa. 306, 14 A. L. R. 791; *Kelly* v. *Knobb*, 300 Fed. 256; Berry on Automobiles (5th ed.) § 177, p. 141; Huddy on Automobiles (8th ed.), § 396, p. 411.

In the application of this rule to the facts of this case we hold that appellee was guilty of contributory negligence, and cannot recover for that reason. If the street light did not reveal the presence of the truck, the light of appellee's own car would have done so, had he been driving with due care. It is true appellee testified that, upon passing the approaching car, which slightly blinded him, he turned somewhat to the right, but his lights shone in advance of his car and always in the direction in which he drove, and he should have kept his car under such control that he could stop within the range of his vision as aided by the lights of his car.

The judgment is therefore reversed, and, as the cause appears to be fully developed, it will be dismissed.

MEHAFFY, J., (on rehearing). The facts are stated in the original opinion, and it is unnecessary to restate them here. A majority of the court has reached the conclusion that a rehearing should be granted and that the case should be reversed and remanded for a new trial, a majority believing that the question of whether plaintiff was guilty of contributory negligence under the circumstances in this case is a question about which fair minded men would differ, and, having reached that conclusion, under the decisions of this court, this question

should have been submitted to the jury for its determination.

The case of *Lauson* v. *Fond du Lac,* 123 N. W. 629, 141 Wis. 57, 25 L. R. A. (N. S.) 40, 135 Am. St. Rep. 30, referred to as the leading case on the subject, we think states the rule too broadly, and that the better rule is announced in the case of *Murphy* v. *Hawthorne,* 244 Pacific 79, 117 Ore. 319, 44 A. L. R. 1397, decided by the Supreme Court of Oregon, March 2, 1926. The court said:

"Appellant's principal contention, aside from the question as to the proper measure of damages, is that we should hold as a matter of law that plaintiff was guilty of contributory negligence in failing to stop his automobile within the range of his vision. While some courts have announced a hard and fixed rule that it is negligent to drive an automobile at such rate of speed that it cannot be stopped within the range of the driver's vision, * * * we think it improper to do so. Each case must be considered in the light of its own peculiar state of facts and circumstances. After all, the test is, what would an ordinarily prudent person have done under the circumstances as they then appeared to exist? Can we say that all reasonable minds would reach the conclusion that plaintiff failed to exercise due care to avoid this collision? We think not. Plaintiff had a right to assume, in the absence of notice to the contrary, that defendant would not put this dusty gray colored truck on the highway after dark without displaying a red light on the rear thereof. If the truck had been lighted, the jury might well have drawn the reasonable inference that plaintiff would have been able to avoid striking it. * * * While there is authority to the contrary, we believe the better reasoned cases support the holding that whether plaintiff failed to exercise due care to avoid the collision was a question of fact for the jury."

After a careful consideration of the case of *Lauson* v. *Fond du Lac, supra,* and many other authorities,

we have concluded that the rule adopted by the Oregon court in *Murphy* v. *Hawthorne, supra,* is the better rule. The Wisconsin case was decided in 1909, and has been followed by a number of cases. The Oregon case was decided in 1926, and is therefore a much more recent decision, and the court in that case reviewed the authorities, considered those supporting both rules, and, we believe, reached the proper conclusion.

This court has frequently in negligence cases approved the rule announced in the Oregon case. This court has said: "The rule is that, where fair-minded men might honestly differ as to the conclusion to be drawn from facts, either controverted or uncontroverted, the question at issue should go to the jury." *St. L. I. M. & S. Ry. Co.* v. *Fuqua,* 114 Ark. 112, 169 S. W. 786.

"While appellee did not succeed in stopping his car before striking the train, he almost did so after he discovered it, and he would perhaps have done so within the distance if the road had not been wet and unduly slick. * * * The most careful and cautious man will frequently make mistakes in measuring and estimating distances within which he can stop his automobile. We think, under the facts and circumstances of this case, the question of negligence on the part of the appellees in this regard is a question solely for the jury." *Bush* v. *Brewer,* 136 Ark. 246, 206 S. W. 322.

"The jury were the judges of the credibility of the witnesses, and might have found that the evidence was in equal poise as to the negligence of Edmonton. Hence it might have returned a verdict in his favor because, as above stated, the burden was upon appellee to establish his negligence, and it might have returned a verdict against appellant because the burden was upon it to show that it was not negligent. Therefore the court did not err in refusing to give the instruction." *Davis* v. *Hareford,* 156 Ark. 67, 245 S. W. 833.

In the case at bar the question of the contributory negligence of the plaintiff, as well as the question of the

negligence of the defendant, was a question that should have been submitted to the jury under proper instructions, because his contributory negligence was a matter about which fair-minded men might honestly differ.

Many other decisions might be cited in support of the rule we have announced. The California court has said: "From the recognized disposition of every rational person to avoid injury, the jury doubtless may infer, where the circumstances shown in evidence warrant it as a legitimate inference of fact, that the injured person did use due care." *Ham* v. *Los Angeles County,* 189 Pac. 462, 46 Cal. App. 148.

This court therefore recognizes that it is a question for the jury to determine whether the injured party was in the exercise of due care; whether he was guilty of contributory negligence. And certainly it will not be contended that any person would intentionally run into a truck where injury would certainly follow. But the disposition of every rational person, as said by the California court, is to avoid injury. And whether he exercised ordinary care is a question of fact.

"It was shown that appellant's driver might have, without the contour of the ground preventing him from so doing, removed the train of vehicles entirely off the paved portion of the roadway before stopping. He gave his reason for not so doing that the ground was wet and he was afraid the wheels might slip. It was a question for the jury to determine whether his act in this, as in other regards, was consistent with the exercise of a reasonable degree of care." *Western Indemnity Co.* v. *Wascon Land & Stock Co.,* 197 Pac. Rep. 390, 51 Cal. App. 672.

It would be useless to undertake to cite all the authorities. There are the two rules—one announced by the Wisconsin court, the other announced by the Oregon court. We think that the rule announced by the Oregon court is the better rule, and we think it is supported by many decisions of this court. In every case where fair-

minded men would honestly differ about a question, that fact makes it a question for the jury and not for the court.

It is contended by appellant that the court erred in permitting the city ordinance to be introduced in evidence, and erred in giving instruction number one, based on said ordinance. The ordinance reads as follows:

"All automobiles shall have at least two white lights forward and one red light to the rear, and all motorcycles and bicycles one light forward from dark to daylight, same to be visible at least 200 feet. Where two lights forward for automobiles, as prescribed by this section, cannot be had, one will be considered sufficient."

Instructions number 1 and number 5, referring to the city ordinance, should not have been given. If it was improper to introduce the ordinance, and we hold that it was, then, of course, it was improper to instruct the jury with reference to the ordinance or any of its provisions. The authorities are in conflict about the admissibility of municipal ordinances, some authorities holding that a violation of a municipal ordinance is negligence *per se,* and others holding that it may be introduced and considered as a circumstance with the other evidence in determining whether the person who violated the ordinance was guilty of negligence.

This court said, with reference to a city ordinance: "The ordinance passed by the city council of Little Rock did not impose upon appellant any additional duty, so far as affected the issues in this case; did not aid the jury, was unnecessary, and should not have been read in evidence." *S. W. Tel. & Tel. Co.* v. *Beatty,* 63 Ark. 65, 37 S. W. 570.

The ordinance introduced in the case at bar, which is set out above, certainly did not impose upon the appellant any additional duties so far as it affected the issues in this case; it did not aid the jury, it was unnecessary, and it should not have been read in evidence. We do not mean to be understood as saying that a city ordinance may not be read in evidence if it aided the jury in

any way to determine the issues in the case. We said in a recent case:

"The admission of every light which reason and experience can supply for the discovery of truth, and the rejection of that only which serves not to guide, but to bewilder and mislead, is the great principle that ought to be the foundation of every system of evidence. Common experience rather than technical rules should be adopted as the test. Mercantile and industrial life, producing, as they do, nearly all the transactions of men that come before the courts of law and equity, are essentially practical. * * * The courts need not discredit what the common experience of mankind relies upon. Judge Cooley once said that 'courts would justly be the subject of ridicule if they should deliberately shut their eyes to the sources of information which the rest of the world relies upon.' Lastly, whenever there is any serious doubt in the law as to whether certain proof is or is not permissible, a safe rule to pursue is to permit the testimony to go to the jury." 10 R. C. L. 861; *Heard* v. *Bank of Hardy, post,* p. 194.

The ordinance introduced has been interpreted since its passage by the public and the officers as applying to cars being used on the streets and not to cars parked on the streets. Hundreds of cars may be seen every night parked on the streets with no light. This is the universal custom, and the above is the interpretation of the ordinance, the meaning given to it by both the public and officials. And, if it does not apply to cars parked on the streets, then, of course, it was improper to introduce it. Its introduction in effect told the jury that a car parked on the street in the night time without light was in violation of the ordinance. Whether it was negligent to leave the car parked as it was at the time without light was a question to be determined by the jury. If a person of ordinary prudence, under the circumstances, would not have left it without lights because of the danger to persons traveling on the street, then it was negligent to

leave it that way. In other words, negligence is the doing something that a person of ordinary prudence would not do under the circumstances, or the failure to do something that a person of ordinary prudence would do under the circumstances. This rule for measuring the conduct of persons charged with negligence has been approved by this court many times. And whether the ordinance prohibited parking a car on the streets without light or not, if parking them without light was negligence and this negligence caused injury, the person so parking the car would be liable. But the ordinance, since we hold that it did not apply to cars parked on the street, had no connection with the case whatever. All facts are admissible in evidence which afford reasonable inferences or throw any light upon the matter contested, but circumstances having no direct connection with the case, which are remote, collateral and irrelevant, should not be admitted as evidence. And this ordinance, as it did not refer to cars parked on the street, was collateral and irrelevant and should not have been admitted.

The views expressed in the original opinion are adhered to, except as we have stated above. After a careful reconsideration of the entire matter, we decline to follow the Wisconsin rule and we follow the Oregon rule, which we think is the one in harmony with our own opinions.

It follows from what we have said that the case must be reversed and remanded for a new trial, and it is so ordered.

WOOD, SMITH and HUMPHREYS, JJ., dissent.