DELFOSSE, Respondent, vs. NEW FRANKEN OIL COMPANY, Appellant.

*March 7—April 1, 1930.*

*A. McComb* of Green Bay, for the appellant.

For the respondent there was a brief by *North, Parker, Bie, Duquaine, Welsh & Trowbridge,* attorneys, and *Samuel D. Hastings,* of counsel, all of Green Bay, and oral argument by *Walter T. Bie.*

FRITZ, J. Viewed most favorably in support of plaintiff's contentions and the jury's verdict, the following facts were established by direct evidence or reasonable inference therefrom: On a dark night defendant's driver, after traveling south on a country highway, turned over to his left side and parked the truck facing south at the left or east edge

of the twenty-four-foot-wide traveled portion of the road. He shut off the motor, but left the headlights lit, and as the front wheels were a little closer to the center of the road the lights cast their brightest beams a little to the right. Within five feet of the left side of the truck there was a ditch paralleling the highway, but to the right of the truck the travelable portion of the highway was still eighteen feet wide. Defendant's driver left the truck, and, crossing a small bridge which was over the ditch opposite the front of the truck, called on a customer to whom he desired to sell and deliver gasoline. South of the truck the road was straight for about one hundred feet, and then in the next one hundred feet it curved about one foot to the west. Plaintiff's son, approaching from the south in plaintiff's automobile, with headlights properly lit, saw the lights of the truck when he was six hundred feet away and traveling at thirty-five to forty miles per hour. As he approached, because of the slightly crosswise position of the truck and the vibration of his wind-shield he thought that the lights of the truck were moving. When he was about one hundred feet away and straightened his car so that his lights headed directly toward the truck, he discovered that it was on the wrong side of the road, but he then thought that it would turn to its right and allow him to pass on its left. He threw his car out of gear and coasted at twenty-five to thirty miles per hour, until he was forty feet from the truck, when, realizing that it was not going to turn to its right, he reduced his speed to ten miles per hour and attempted to avoid a collision by going along the ditch to the right of the truck. In doing so the hub cap of the rear left wheel struck the tire and hub cap of the left front wheel of the truck, and the automobile demolished the bridge and was damaged.

The jury found (1) that the collision was the natural and probable result of the parking of the truck to the left of the

center of the road; (2) that the truck driver ought to have foreseen that a collision with a traveler upon the highway might probably follow from such parking; and (3) that plaintiff's son was not driving at an unlawful speed and did not fail to keep a proper lookout. Upon that verdict the court ordered judgment in favor of the plaintiff for the recovery of the damages assessed by the jury.

Defendant assigns as error that the court erred in not changing the jury's findings so as to absolve the defendant from negligence, and find plaintiff's son guilty of contributory negligence as a matter of law "in driving into a bridge in the face of blinding lights."

The questions of whether there was negligence on the part of either driver are so close under the evidence in this case that it would have been within the province of the jury to answer otherwise than they did as to each finding. The truck driver did not violate sec. 85.02, Stats. 1927, by parking his truck on the left side of the highway. There was still left, as required by statute, a free and usable passageway of at least eighteen feet, so that vehicles going in opposite directions could pass without interference from any standing vehicle. His temporary parking, merely long enough to make a necessary business call and delivery, incidental to his lawful travel upon the highway, did not constitute an unreasonable use thereof if he did not thereby unreasonably interfere with others; and the use of the left-hand side of the road while making such reasonable use thereof, without any unreasonable interference with others, does not constitute negligence *per se*. *Schacht v. Quick,* 178 Wis. 330, 190 N. W. 87. Likewise, as the truck was at a standstill, and not being driven as plaintiff's automobile approached, sec. 85.01, Stats., providing that whenever drivers of vehicles "shall meet on any highway" each shall seasonably drive his vehicle to the right of the middle of the traveled part of the highway, is inapplicable, and there was no violation thereof by defendant's driver.

However, the evidence presents more than the simple situation of an automobile parked on the left-hand side of the highway. In addition there were the following peculiar circumstances: A dark night. A roadway which, in width, afforded abundant opportunity for parking a south-bound truck elsewhere than in the usual pathway of north-bound cars. A slight curve, around which a north-bound car had to turn until it was within one hundred feet, and because of which, until then, its lights would be reflected to the east of the parked truck. A truck parked so as to face, and to cast its lights, slightly to its right, because of which, aggravated by the further deception caused by the vibration of the wind-shield of the approaching north-bound car, the driver thereof was misled into believing that the truck was in motion and passing along, or toward, its right side of the road. In view of that combination of circumstances, the issue of whether the truck driver was negligent presented a question for the jury. See *Whitworth v. Riley,* 132 Okla. 72, 269 Pac. 350.

Likewise, in view of those circumstances, and the further fact that this is not a case in which the driver of plaintiff's car continued approaching, without diminution in speed, when he had no adequate opportunity for observation because he was blinded by other headlights (*Pietsch v. McCarthy,* 159 Wis. 251, 150 N. W. 482); or by a cloud of dust or smoke (*Johnson v. Prideaux,* 176 Wis. 375, 187 N. W. 207; *Fannin v. Minneapolis, St. P. & S. S. M. R. Co.* 185 Wis. 30, 200 N. W. 651); or when his own lights were inadequate to light up ahead of him for a sufficient distance to enable him to see an obstruction in time to avoid a collision (*Lauson v. Fond du Lac,* 141 Wis. 57, 123 N. W. 629; *Yahnke v. Lange,* 168 Wis. 512, 170 N. W. 722; *Yano v. Stott Briquet Co.* 184 Wis. 492, 199 N. W. 48; *Bergenthal v. Boynton A. L. Co.* 179 Wis. 42, 190 N. W. 901; *Kleist v. Cohodas,* 195 Wis. 637, 219 N. W. 366); or when his lights were adequate and there were no circumstances which

excused his failure to see an observable object (*Worden v. Chicago & N. W. R. Co.* 180 Wis. 551, 193 N. W. 356; *Knapp v. Somerville,* 196 Wis. 54, 219 N. W. 369; *Forster v. Outagamie Equity Co-op. Exchange,* 197 Wis. 63, 221 N. W. 376),—the issue of whether that driver was guilty of contributory negligence was also a question for the jury. The lights of the truck were observed by plaintiff's son when he was six hundred feet away from it, although his own lights were not headed toward it until he was within one hundred feet of the truck; and, until then, he could not well have discovered that the truck was on the wrong side of the road. Because of the peculiar circumstances hereinbefore stated, he may, without negligence on his part, have been misled, as he testified, into believing that the truck was in motion and that it would move to its right-hand side of the highway. If so, he was entitled to rely on that impression and assume that the truck would yield his right of way to him until, in the exercise of ordinary care, he ought to have realized the contrary, and thereupon exercised ordinary care to avoid a collision.

In *Hatch v. Daniels,* 96 Vt. 89, 117 Atl. 105, 107, the court said in relation to a driver's conduct under similar circumstances:

"The record discloses nothing to indicate that the plaintiff ought sooner to have seen it. When he did see it he had plenty of time to avoid it. But he made the mistake of assuming that it was approaching him. Surely it cannot be said as matter of law that this was negligence. It was at least a question for the jury. Whether a prudent man would or could reach this conclusion depended upon various circumstances. . . . The appearances caused by the reflection of the plaintiff's lights on the vibrating glass of the defendant's car; the improbability that a driver would stop his car in the dark on the wrong side of the road,—these were some of the circumstances to be considered in deciding whether the plaintiff lost his standing as a prudent man when he concluded that the defendant's car was coming toward

him. . . . One thus driving an automobile along a public highway, who sees a car approaching on the wrong side of the road, has, at the outset, a right to assume that it will observe the law of the road and seasonably move over to its right so as to pass without interference; and he may proceed on this assumption until he sees, or in the circumstances ought to see, that it is unwarranted. This is an application of the rule that ordinarily one may regulate his own conduct on the assumption that others will act reasonably and lawfully."

In the case at bar the evidence admitted of the jury's verdict, and the learned circuit judge has approved of that verdict in ordering judgment thereon.

There should also have been submitted to the jury the issue of whether plaintiff's son was negligent in not avoiding a collision after he realized, or, in the exercise of ordinary care, should have appreciated, that the truck was not yielding the right of way to him. However, as neither party requested a finding on that issue, and inasmuch as the evidence admitted of a finding favorable to plaintiff, and the circuit judge has ordered judgment in plaintiff's favor, that issue must now be deemed determined by the court in conformity with the judgment. Sec. 270.28, Stats.; *Smith v. Reed,* 141 Wis. 483, 124 N. W. 489; *Gegare v. Fox River L. & L. Co.* 152 Wis. 548, 140 N. W. 305; *Dreblow v. Albert,* 155 Wis. 189, 144 N. W. 254.

For the reasons stated, the assignments of error must be overruled and the judgment affirmed.

*By the Court.*—Judgment affirmed.