MUREL WITHERLY

*vs.*

THE BANGOR AND AROOSTOOK RAILROAD COMPANY.

Aroostook.　　Opinion January 8, 1932.

*R. W. Shaw*, for plaintiff.
*Henry J. Hart*,
*Frank P. Ayer*,
*James C. Madigan*,
*Cook, Hutchinson, Pierce & Connell*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

DUNN, J. Action by an automobilist to recover for personal
injuries, and for damage to his car, from a grade crossing collision
with a freight car. A verdict was ordered for the defendant. The
plaintiff saved an exception.

On October 31, 1929, about 11.30 o'clock, P.M., the night being
dark but clear, plaintiff drove his automobile against an empty flat
car, standing motionless across a highway, as part of a train.

The accident occurred at Dyer Brook, in proximity to the sta-
tion and switching yards of the defendant.

Plaintiff alleged the defendant actionably negligent in failing
to provide suitable signs, lights, and bells, and in neglecting to have
a brakeman on the car, with a suitable lantern, for the protection
of highway travelers approaching the crossing.

The train had just been made up, and was about to pull out,
southbound.

In making the train, sixteen cars, inclusive of the flat car, were
hauled from a spur track to the main railroad track, and backed
and coupled to another string of thirty-nine cars.

The main track, and a siding twenty feet northerly of it, cross
the highway, which runs northeast and southwest, at acute angles.
The flat car, counting from the locomotive, was thirteenth in line;
the twelfth and fourteenth cars were box cars.

Plaintiff, accompanied by a guest passenger, was traveling
southwest; his automobile lights "only focussed at twenty-five
feet." The statutes exact that automobiles shall have front lamps
of sufficient candle power to render any substantial object clearly
discernible on a level way at least two hundred feet directly ahead.

R.; S., Chap. 29, Sec. 82.. Upon the plaintiff's own testimony, he violated the provisions of this statute. There may have been relationship between insufficient lights and injury.

No other traffic was moving in the vicinity, and at this hour of the night there would normally be no sound on the unlighted country road.

The highway approaches the crossing, straight for a thousand feet; it is moderately down grade for nine-tenths of the way; level almost to the crossing, and beyond it, passes over a hill. The plaintiff traveled the road two or three times a year.

He saw, at the side of the road, three hundred and forty-seven feet from the crossing, the statutory warning sign, a white disc supported by a fixed post, bearing the letters "R.R.," and knew what they foretokened. Sixty feet farther on, or two hundred and eighty-seven feet from the crossing, at the side of the highway, was a so-called danger sign, that warns at night by reflecting the lights of vehicles. The lights on plaintiff's car caused the sign to glow.

Without request therefor having ever been made, the defendant maintains an automatic wigwag signal south of its main track. Wigwag signals are to protect against approaching trains. R. S., Chap. 64, Sec. 88.

There was evidence that the red light on the wigwag was burning brightly. The plaintiff testified that, though he looked for this light, he did not see it. This is easily explained. A box car was between his sight and the light. That the box car hid the wigwag light is immaterial, since the train itself was notice of its presence. *Yardley* v. *Rutland R. Co.* (Vt., 1931), 153 Atl., 195.

Witnesses attested that the bell on the wigwag was ringing continuously, but plaintiff said that he did not hear it. Nor, according to his testimony, did he hear engine whistles, notwithstanding the windows of his car were partly down.

On the version of the plaintiff, he slackened the speed of his automobile, at the disc, to twenty-five miles an hour; and then to twenty miles. He is testified to having admitted that, to the instant of first seeing the flat car, when his own car was across the siding, and he applied the brakes and attempted to swerve its course, he had traveled at a faster speed.

Whatever may be the fact concerning its speed, plaintiff's automobile proceeded to the main track, struck the flat car, and knocked it from the rails.

It is not in itself negligence for a railroad company to allow a train of cars to remain across a highway. *Philadelphia & R. Ry. Co.* v. *Dillon* (Del., 1921), 114 Atl., 62, 15 A. L. R., 894; *St. Louis-San Francisco Ry. Co.* v. *Guthrie* (Ala., 1927), 114 So., 215; *Gulf, M. & N. R. Co.* v. *Holifield* (Miss., 1929), 120 So., 750; *Hendley* v. *Chicago & N. W. Ry. Co.* (Wis., 1929), 225 N. W., 205. Negligent obstruction of a highway by a standing train is determined by whether, under all the circumstances, it is reasonable or otherwise. R. S., Chap. 64, Sec. 79; *State* v. *Grand Trunk Ry.*, 59 Me., 189; *Killen* v. *New York Cent. R. Co.*, 232 N. Y. S., 76.

The judge in the trial court was not more specific, in his statement directing the verdict, than that, giving plaintiff's evidence the most favorable viewpoint, it would not justify the jury in returning a verdict in his favor. Whether the judge held, as a matter of law, that there was no sufficient evidence of actionable negligence on the part of the defendant, need not be the subject of investigation. The trial court was not confined to this inquiry alone.

The substantive law of negligence requires proof, by the greater amount of credible evidence, of negligence on the part of the defendant; and, equally as important, proof that the plaintiff was not himself in fault, proximately causal to injury. *Wilds* v. *Hudson River R. R. Co.*, 24 N. Y., 430; *Romeo* v. *Boston & Maine Railroad*, 87 Me., 540, 547.

Literally, there was some evidence that, in approaching the crossing, the plaintiff had been careful. But this evidence is overwhelmed by opposing evidence, and the reasonable inferences deducible from established facts, that plaintiff did not exercise that due precaution which men of reasonable prudence, conscious of danger, usually exercise to avoid the incurrence of injury. The jury, therefore, had no evidence before it on which a verdict for the plaintiff could be based. *Moulton* v. *Sanford, etc., Ry. Co.*, 99 Me., 508; *Cyr* v. *Landry*, 114 Me., 188; *Raymond* v. *Eldred*, 127 Me., 11. To carry a case to the jury, the evidence on the part of the plaintiff must be such as, if believed, would authorize them to find that damage was occasioned solely by the negligence of the defendant. *Johnson* v.

*Hudson River R. R. Co.*, 20 N. Y., 65, 73; *Gahagan* v. *Boston & Lowell R. R. Co.*, 1 Allen (Mass.), 187.

Care and vigilance must depend on surrounding conditions, and be proportioned to known danger. "A railroad crossing is known to be a dangerous place, and the man who, knowing it to be a railroad crossing, approaches it, is careless unless he approaches it as if it were dangerous." *Wilds* v. *Hudson River R. R. Co.*, supra. To him, the danger is vastly greater than it is to the train; he may lose his life. *Wilds* v. *Hudson River R. R. Co.*, supra. A railroad crossing is a place of special danger. *Fogg* v. *New York, etc., R. R. Co.*, 223 Mass., 444. All railroad crossings are hazardous. *Lenning* v. *Des Moines, etc., R. R.* (Iowa, 1929), 227 N. W., 828. It is always train time at any railroad crossing. *High* v. *Waterloo, etc., Ry. Co.* (Iowa, 1922), 190 N. W., 331.

When a highway and a railroad cross at grade, the highway traveler should look, listen, and should stop, if there is room for doubt. *Ham* v. *Maine Central R. R. Co.*, 121 Me., 171. Besides, he should be attentive to make such acts reasonably effective.

That the accident happened at night was no excuse. *Rhodes* v. *Pennsylvania R. Co.* (Pa., 1929), 147 Atl., 854; *Anspach* v. *Philadelphia & R. Ry. Co.* (Pa., 1909), 74 Atl., 373; *Eline* v. *Western Maryland Ry. Co.* (Pa., 1918), 104 Atl., 857. A greater degree of precaution must be exercised when darkness throws a mantle over vision.

Plaintiff was aware of the location of the railroad crossing. He should have availed himself of his knowledge of the locality. *Gray* v. *Pennsylvania R. Co.* (Del., 1926), 139 Atl., 66; *McFadden* v. *Northern Pacific Ry. Co.* (Wash., 1930), 289 Pac., 1. The admonitory signs by the roadside should have enlivened his memory. He appears to have been heedless of their call to his attention of the duty imposed upon him by law, to exercise ordinary care in crossing the track. He could not abandon circumspection, and, injury befalling him, charge his delinquency to the railroad.

It is unmistakably apparent that conduct on the part of the plaintiff, without which the accident would not have happened, fell short of that of the typically prudent man, alert for safety. Both authority and common sense bar him from recovery. *Mailhot* v. *New York, etc., R. Co.* (Mass., 1930), 173 N. E., 422; *Scripture*

v. *Maine Central R. R. Co.*, 113 Me., 218. Plaintiff was rightly condemned of negligence, as a matter of law. No legal principle compels a judge to allow a jury to render a merely idle verdict.

As supporting this conclusion, see *Philadelphia & R. Ry. Co.* v. *Dillon*, supra, and note. See, also, *McGlauflin* v. *Boston and Maine Railroad*, 230 Mass., 431; *Mailhot* v. *New York, etc., Co.*, supra; *Farmer* v. *New York, etc., R. Co.*, 217 Mass., 158; *Nadasky* v. *Public Service R. R. Co.*, 97 N. J. L., 400; *Hendley* v. *Chicago & N. W. Ry. Co.*, supra; *Yano* v. *Stott Briquet Co.* (Wis., 1924), 199 N. W., 48; *Toledo Terminal R. Co.* v. *Hughes* (Ohio, 1926), 154 N. E., 916; *Gilman* v. *Central Vermont Ry. Co.*, 93 Vt., 340; *Worden* v. *Chicago & N. W. Ry. Co.* (Wis., 1923), 193 N. W., 356; *Gallagher* v. *Montpelier & Wells River R. R.*, 100 Vt., 299.

*Exception overruled.*